Eric P. Tuttle (CA Bar No. 248440*)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
eric.tuttle@mto.com

Stephanie G. Herrera (CA Bar No. 313887*)
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077
stephanie.herrera@mto.com

John H. Gray (#028107)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
JHGray@perkinscoie.com
DocketPHX@perkinscoie.com
*Pro Hac Vice*

*Attorneys for Intervenor-Defendant*
*San Francisco Giants Baseball Club LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lasse Norgaard-Larsen, et al., | Case No. 2:20-cv-02467-GMS |
| Plaintiffs, | **MOTION TO DISMISS BY INTERVENOR-DEFENDANT SAN FRANCISCO GIANTS BASEBALL CLUB LLC; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| City of Phoenix, et al., | **(ORAL ARGUMENT REQUESTED)** |
| Defendants. | Judge:    Hon. G. Murray Snow |

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

MOTION ............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 3

BACKGROUND ................................................................................................ 5

     A.    1937 Patent:  United States Grants Land At Issue To Arizona ...................... 5

     B.    1960s:  Arizona Transfers Land At Issue To Phoenix With The United States' Approval ......................................................................................... 6

     C.    2018:  Land At Issue Is Leased To Giants ....................................... 7

     D.    1997:  United States Transfers Different Tract Of Land To Phoenix ............ 8

     E.    Plaintiffs' Action' ........................................................................... 11

ARGUMENT .................................................................................................. 11

I.     THE FEDERAL USE RESTRICTION AND REVERSIONARY RIGHT CREATED BY THE 1937 PATENT EXPIRED IN 1984 ....................... 12

II.    THE 1997 PATENT DID NOT CONVEY THE LAND UNDERLYING THE FACILITY AND THUS HAS NO BEARING ON ITS USE ................. 15

III.   BECAUSE THESE LEGAL DEFICIENCIES CANNOT BE CURED, THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE .......................... 17

CONCLUSION ............................................................................................... 17

i

## MOTION

Intervenor-Defendant San Francisco Giants Baseball Club LLC ("Giants") hereby moves to dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons below and in the Memorandum of Points and Authorities and supporting papers, Plaintiffs' remaining claim under the Property Clause of the U.S. Constitution is meritless as a matter of law and cannot be cured by amendment.

The Complaint concerns a lease and sublease of a baseball facility located at 1802 N. 64th Street in Phoenix, Arizona ("Facility"), which is a portion of the Southeast Quarter of Section 33, Township 2 North, Range 4 East of the Gila and Salt River Meridian, Maricopa County, Arizona ("Southeast Quarter of Section 33").[1]  (*See* Doc. 1-1 at 18 [legal description of leased property, attached to Complaint].)

The gist of Plaintiffs' Property Clause claim is that the lease and sublease, which provide for the Giants' use of and improvements to the Facility, allegedly contravene federal use restrictions requiring that the land be used as a public park, thereby purportedly giving rise to reversionary rights in the federal government.  The Complaint identifies two sources of such purported federal restrictions and reversionary rights:

- A ***1937 patent*** conveying much of the former Papago Saguaro National Monument from the United States to the State of Arizona, pursuant to the Act of Congress of April 7, 1930, 46 Stat. 142.  Consistent with the 1930 Act, the 1937 patent provides that the conveyance is subject to "the express condition[] that the lands so granted shall be used only for municipal, park, recreation, or public-convenience purposes" and establishing a reversionary interest in the federal government if the land should ever "be abandoned for such use."  (*See* Compl. at 6, 16, 25; Doc. 1-2 at 1-3 [copy of 1937 patent attached to Complaint].)

- A ***1997 patent*** conveying additional land from the United States to the City of Phoenix "for a city park only" and establishing a reversionary interest in the federal government if the land should ever be "not … used for the purpose for which the lands were conveyed for a 5-year period."  (*See* Compl. at 7, 16, 20, 25; Doc. 1-2 at 5-7 [copy of 1997 patent attached to Complaint].)

As a matter of law on the facts pleaded, neither of these federal restrictions or

---

[1] Abbreviations introduced in this Motion are used in the accompanying Memorandum.

-1-

1   associated reversionary rights applies to the Facility today.

2       Plaintiffs allege that the 1937 patent conveyed title to the portion of Papago Park

3   (the Southeast Quarter of Section 33) where the Facility is now located.  But the restriction

4   and reversionary interest associated with the 1937 patent and the land it conveyed expired

5   as a matter of law on December 31, 1984.  That is because, as the Complaint itself alleges

6   and records pasted into its attachments show, on January 1, 1960 the United States

7   approved the transfer of this portion of Papago Park from the State of Arizona to the City

8   of Phoenix.  (*See* Compl. at 8 [describing "Certificate of Approval of Transfer and Change

9   of Use" dated January 1, 1960], 15 [same]; Doc. 1-2 at 4 ["The Correct 'Certificate of

10  Approval of Transfer and Change of Use' is No. 4, dated January 1, 1960"]; Doc. 1-3 at 2-

11  3 [describing "Certificate of Approval of Transfer and Change of Use" dated January 1,

12  1960, and explaining that it is the "Correct document for [the] facility" because it refers to

13  "Sect. 33 where Facility is located"], 9 [describing 1960 certificate], 15 [copy of 1960

14  certificate pasted into attachment to Complaint].)[2]  Under Section 4 of the Recreation and

15  Public Purposes Act, as an automatic consequence of the Secretary's authorization of this

16  transfer, "all reverter provisions and other limitations on transfer or use … cease[d] to be

17  in effect twenty-five years after the Secretary authorize[d] the transfer," *i.e.*, as of

18  December 31, 1984.  43 U.S.C. § 869-3; *see also* Pub. L. No. 387 (c. 263), § 4, 68 Stat.

19  175 (June 4, 1954).

20       The 1997 patent is irrelevant because the land on which the Facility sits was not

21  conveyed by that patent.  As the lease attached to the Complaint shows, the lease for the

22  Facility concerns a portion of the *Southeast* Quarter of Section 33.  (*See* Doc. 1-1 at 18

23  [legal description of leased property, attached to the Complaint].)  As Plaintiffs also allege,

24  and as the patents and contracts attached to Plaintiffs' Complaint show, that land was

25  granted by the United States to Arizona in 1937 and from Arizona to Phoenix in 1964.

---

[2] Exhibit D to the Giants' concurrently-filed Unopposed Request for Judicial Notice is a more legible copy of the January 1, 1960 certificate that was pasted into the attachments to the Complaint.  (*See* Doc. 1-3 at 15.)

(*See* Compl. at 6-7 [describing history of Papago Park and transfer pursuant to 1937 patent], 16, 25; Doc. 1-2 at 1-3 [1937 patent, attached to Complaint], 8-13 [1964 deed transferring land at issue from Arizona to Phoenix, attached to Complaint]; Doc. 1-3 at 2-3 [describing 1937 patent and 1964 indenture].)  Phoenix thus already owned the land underlying the Facility in 1997.  The 1997 patent granted different lots, including one in the *Southwest* Quarter of Section 33, that do not touch the Facility.  Exhibits A–C to the Unopposed Request for Judicial Notice are Bureau of Land Management records that confirm the respective locations of the Facility and the land granted by the 1997 Patent.

Because these legal deficiencies would make any amendment futile, the Complaint should be dismissed with prejudice.

This Motion is supported by the attached Memorandum of Points and Authorities; the Unopposed Request for Judicial Notice and Exhibits A–D; all documents on file in this action; and such further argument as may be offered before or at a hearing of this Motion.

Pursuant to LRCiv. 12.1(c), the undersigned certifies that the Giants conferred with Plaintiffs regarding the bases for this Motion and the parties were unable to resolve these issues short of motion practice.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs' sole remaining claim is for violation of the Property Clause of the U.S. Constitution.  (*See* Doc. 20 at 3-5, 7 ["MTD Order"].)  Specifically, Plaintiffs contend that, through land grants, the United States has restricted the use of, and possesses associated reversionary rights to, land that Phoenix and Scottsdale have leased to the Giants for private use as a baseball facility in Papago Park.  In support of their Property Clause claim, Plaintiffs point to two sources of such purported federal restrictions and rights: a 1937 patent and a 1997 patent.[3]  As to each alleged source, Plaintiffs' claims fail as a matter of

---

[3] Plaintiffs separately alleged violations of restrictions under the Land and Water Conservation Fund Act ("LWCFA") and the Federal Property Act ("FPA") (Compl. at 2, 18-19), but the Court has dismissed those claims with prejudice because neither statute provides a private right of action.  MTD Order at 4-5.  Plaintiffs allege various purported non-federal restrictions, but only *federal* property interests implicate the Property Clause.

law on the facts and records they themselves included in the Complaint.

The 1937 patent transferring the land at issue from the United States to Arizona contained a use restriction and attendant reversionary right, but as Plaintiffs themselves plead, the United States authorized Arizona to transfer the land to Phoenix in 1960.  Under a statutory provision enacted by Congress in 1954, the United States' approval of this transfer caused any federal use restrictions or reversionary rights in the land to expire 25 years after the approval, *viz.*, on December 31, 1984.  *See* 43 U.S.C. § 869-3.  Plaintiffs argue that this statutory provision was repealed before the January 1960 transfer, but they are mistaken; the provision was in force in 1960 and still is on the books.  There are thus no longer any restrictions or reversionary rights under the 1937 patent as a matter of law.

The 1997 patent conveyed land that does not touch the Facility, as Plaintiffs' allegations, the documents attached to their Complaint, and judicially noticeable public land records all unequivocally establish.  Moreover, the Complaint and attachments show that Phoenix owned the land that has been leased to the Giants as of *1964*; the United States thus no longer had title to and could not have conveyed that land to Phoenix in 1997.  Accordingly, the 1997 patent is irrelevant as a matter of law.

It is thus no surprise that the United States has expressly disclaimed any property interest in the land underlying the Facility.  In correspondence Plaintiffs themselves attached to the Complaint, the Office of the Solicitor for the U.S. Department of the Interior wrote that "[t]he Bureau of Land Management reviewed its Papago Park files and the area of the new baseball fields" and "determined that the United States no longer has any property interest in the area."  (Doc. 1-3 at 15.)

Plaintiffs cannot plead their way around the reality that, as a matter of law on the facts alleged in the Complaint, the land at issue simply is not subject to the federal use restrictions or reversionary interests Plaintiffs allege.  Because these fatal deficiencies in Plaintiffs' Property Claim cannot be cured by amendment, the Giants respectfully request that the Court dismiss the Complaint with prejudice.

# BACKGROUND

## A.    1937 Patent:  United States Grants Land At Issue To Arizona

Much of the land that makes up Papago Park was granted by the United States to Arizona by a land patent (No. 1093785) dated November 17, 1937 and signed by President Roosevelt ("1937 Patent").  (*See* Compl. at 6 [describing history of Papago Park and 1937 transfer from United States to Arizona]; 16 [same]; Doc. 1-2 at 1-3 [attaching 1937 Patent to Complaint].)  The 1937 Patent was issued pursuant to an April 7, 1930 act abolishing Papago Saguaro National Monument and providing for disposition of the land for military, park, recreational and public-convenience purposes ("1930 Act"), *see* Pub. L. No. 92, 46 Stat. 142, 71 Cong. Ch. 107 (Apr. 7, 1930).  The 1930 Act includes language requiring that certain tracts of the former Monument land be granted to the State of Arizona "for park, recreation, or public-convenience purposes," and that if such land "shall be abandoned for such use, such lands … shall revert to the United States."  *See* Pub. L. No. 92, § 2.  (*See, e.g.*, Compl. at 6 [describing 1930 act], 16 [same], 25 [same].)

Among the land granted by the United States to Arizona for Papago Park by the 1937 Patent is "the *southeast* quarter of Section thirty-three in Township two north all in Range four east of the Gila and Salt River Meridian, Arizona."[4]  (Doc. 1-2 at 2 [1937 Patent] [emphasis added].)  Consistent with the 1930 Act, the 1937 Patent recites that this land was granted to Arizona "upon the express condition, that the lands so granted shall be used only for municipal, park, recreation, or public-convenience purposes," subject to a reversionary interest in the United States should the condition be violated.  (*Id.* at 3.)

---

[4] This legal description of the Facility's location corresponds to a rectangular coordinate system called the Public Lands Survey System, a system initiated by the Land Ordinance of 1785 and used to survey and subdivide the Northwest Territory and territories acquired thereafter.  *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 268 n.3 (1986).  In this system, land is subdivided by east-west and north-south lines into townships, ranges, and sections.  43 U.S.C. § 751; *see generally United States v. Estate of St. Clair*, 819 F.3d 1254 (10th Cir. 2016).  These are organized around a point of reference, which in this case is the intersection of the Gila and Salt Rivers in Arizona.  *See Maricopa Cnty. v. Pima Cnty.*, 34 Ariz. 59, 62 (1928).

The 1930 Act reserved other tracts, including "the *southwest* quarter of section 33, township 2 north, range 4 east" for military use by the Arizona National Guard.  Pub. L. No. 92, § 1, 46 Stat. 142 (emphasis added).  These tracts were accordingly *not* granted to Arizona in the 1937 Patent.  (Doc. 1-2 at 1-3 [reserved tracts not listed in 1937 Patent].)

**B.**     **1960s:  Arizona Transfers Land At Issue To Phoenix With The United States' Approval**

On January 1, 1960, the United States approved Arizona's transfer to Phoenix of certain portions of the land granted to Arizona by the 1937 Patent, including the Southeast Quarter of Section 33.  This approval is memorialized by a "Certificate of Approval of Transfer and Change of Use" dated January 1, 1960, bearing Certificate "No. 4," which is described throughout and pasted into the Complaint ("1960 Certificate").  (*See* Compl. at 8, 15; Doc. 1-2 at 4, Doc. 1-3 at 2-3, 9, 15 [copy of 1960 Certificate].)  A copy of the 1960 Certificate is also attached as Exhibit D to the Giants' Unopposed Request for Judicial Notice ("RJN Ex. D") because the copy pasted into the Complaint is difficult to read.[5]

As Plaintiffs repeatedly admit in the pleadings, the United States' Certificate of Approval expressly states that the "approval is subject to the reversionary provisions of the above noted Act [of June 14, 1926 as amended, 43 U.S.C § 869 *et seq.*], *terminating 25 years from January 1, 1960*."  (Compl. at 8 [emphasis added]; *see also* Doc. 1-3 at 15 [attaching Certificate of Approval of Transfer and Change of Use, No. 4, dated January 1, 1960]; *see also*  Doc. 1-2 at 4 [admitting that "[t]he correct 'Certificate of Approval of Transfer and Change of Use' is No. 4, dated January 1, 1960"]; Doc. 1-3 at 2-3 [similar].)

In August 1964, pursuant to this federal authorization, Arizona transferred to Phoenix land including the Southeast Quarter of Section 33—as described in and evidenced by the land records attached to the Complaint.  (Compl. at 6-7 [describing

---

[5] As explained in the Unopposed Request for Judicial Notice, Exhibit D is a judicially noticeable public land record, but judicial notice is unnecessary because this document is already part of the pleadings.  *See Greiff v. Life Ins. Co. of N. Am.*, 386 F. Supp. 3d 1111, 1113 (D. Ariz. 2019).  Plaintiffs do not object to the Court's consideration of any Exhibits to the Request for Judicial Notice, but disagree about their implications for this motion.

transfer from Arizona to Phoenix via 1964 indenture]; Doc. 1-2 at 8 [attaching 1964 indenture from Arizona to Phoenix]; Doc. 1-3 at 3 [describing 1964 transfer].)

In addition to authorizing the transfer to Phoenix, the 1960 Certificate also approved a change of use for the land, to include "the construction of a baseball stadium." (*See* Doc. 1-3 at 15.)  As Plaintiffs allege, a baseball stadium was constructed in Papago Park and used by the Oakland Athletics for many years.  (Compl. at 19; *see also* Doc. 1-3 at 21 ["Papago Park has been home to a professional baseball complex since the City entered into an operating agreement with the Oakland A's in 1994.  The A's used the facility through 2014."]; Doc. 1-4 at 35, 39.)

## C.   2018:  Land At Issue Is Leased To Giants

On November 26, 2018, Phoenix leased the Facility to Scottsdale ("Lease"). (Compl. at 5 [describing Lease]; Doc. 1-1 at 1-23 [Lease, attached to Complaint].)  As stated in the Lease attached to the Complaint, the Facility comprises a "portion of the Southeast Quarter of Section 33, Township 2 North, Range 4 East of the Gila and Salt River Meridian, Maricopa County, Arizona."  (Doc. 1-1 at 18 [legal description of Leased property].)  This is further illustrated on a map attached to the Complaint that Plaintiffs allege is "a very good geographic representation" of the legal description in the Lease:



**Figure 1.  Facility location near southeast corner of Section 33**

(*See* Doc. 1-1 at 21 [Easement Exhibit showing Facility location, attached to Complaint, with commentary].)  As Figure 1 shows**,** the Facility is near the southeast corner ("SE CORNER") of Section 33, just north of McDowell Road.

In other words, the Lease concerns a portion of the *Southeast* Quarter of Section 33 granted to Arizona in the 1937 Patent and transferred from Arizona to Phoenix in 1964. On December 1, 2018, Scottsdale signed a sublease with the Giants providing for use of and improvements to the Facility.  (Compl. at 5 [describing sublease].)

**D.**   **1997:  United States Transfers Different Tract Of Land To Phoenix**

Meanwhile, in 1997, the United States decided to transfer to Phoenix certain other land that once comprised Papago-Saguaro National Monument but had been retained by the United States under the 1930 Act for military use.  *See* Pub. L. No. 92, § 1, 46 Stat. 142.  Specifically, as the records attached to the Complaint show, the United States granted to Phoenix by patent dated May 22, 1997 ("1997 Patent"):  (1) Township 1 North, Range 4 East, section 4, lots 3 and 5, and section 5, lot 6; and (2) Township 2 North, Range 4 East, section 33, lot 2.  (Doc. 1-2 at 5 [1997 Patent, attached to Complaint].)

Lot 2 of Section 33, granted to Phoenix under the 1997 Patent, is not part of the *Southeast* Quarter of Section 33, where the Facility is located.  The Southeast Quarter of Section 33 had already been transferred from the United States to Arizona (in 1937) and then to Phoenix (in 1964), as described above.  Rather, lot 2 of Section 33 is a triangle of land along the baseline of the *Southwest* Quarter of Section 33, south of McDowell Road.

1   This is confirmed and illustrated by the official Bureau of Land Management plats

2   that are attached as Exhibits A–B to the Giants' Unopposed Request for Judicial Notice;

3   Exhibits A and B are excerpted and annotated below as **Figures 2 and 3** respectively.[6]



**Figure 2.  Supplemental Plat showing lot 2 in Section 33 Southwest**

---

[6] A "plat" is an official map generated by the Bureau of Land Management showing the boundaries of a township and its sections. *Estate of St. Clair*, 819 F.3d at 1257; *accord* 43 U.S.C. § 751.  Exhibits A and B show Section 33, and Exhibit C shows the Township 1 lots granted in the 1997 Patent.  As set forth in the Unopposed Request for Judicial Notice, Exhibits A-C are judicially noticeable and may be considered on this Rule 12(b)(6) motion as official records of government action and public land records.  *See* RJN and cases cited therein.  Indeed, Plaintiffs do not oppose the Court's consideration of these documents in connection with this motion to dismiss; they simply disagree with the implications of those documents for the merits of the Giants' arguments.  Color-coding and labels have been added to Figure 2 for clarity.



**Figure 3. Master Title Plat showing Sections 32 and 33, including Southeast Quarter (granted by patent "1093785" and transferred by "Cert No. 4"), lot 2 (granted by patent "02-97-0007") and land reserved for military (pursuant to "4/7/1930" act)**

In both Figures, lot 2 is indicated by the number "2" with an arrow indicating a triangle comprising 2.46 acres in the southeast corner of the Southwest Quarter of Section 33, along the baseline. In Figure 3, there is a second arrow connecting triangular lot 2 with the notation "02-97-0007," the number of the 1997 Patent. (*Cf.* Doc. 1-2 at 5-7 [copy of 1997 Patent, Number 02-97-0007 attached to Complaint].) The rest of the Southwest Quarter of Section 33, and much of the Southeast Quarter of Section 32, are shown in Figure 3 surrounded by a dotted line, which is labeled with the notation "4/7/1930 Wdl Military Purposes," referring to the reservation of these tracts for military purposes pursuant to the 1930 Act. *Cf.* Pub. L. No. 92, § 1, 46 Stat. 142. As shown in Figure 1 above and described in the Lease attached the Complaint, the Facility is located in the separate *Southeast* Quarter of Section 33, which is labeled in Figure 3 with the notations "Cert No 4" and "1093785," which refer to the 1960 Certificate and the 1937 Patent respectively. (*Cf.* Doc. 1-2 at 1-2 [1937 Patent, stamped at top "Patent No. 1093785"]; Doc. 1-3 at 15 [1960 Certificate, bearing No. 4].)

-10-

1    In sum, the relevant history of the tracts at issue is illustrated in the below timeline:



**1930:** Congress abolishes Papago Saguaro National Monument; 33SE to be granted to AZ, 33SW to be reserved for military use

**1960:** US approves AZ transfer of 33SE to Phoenix (Cert. No. 4)

**1997:** US grants lot 2 in 33SW to Phoenix (Patent No. 02-97-0007)

**1937:** US grants 33SE to AZ (Patent No.

**1984:** US restrictions and reversionary rights in 33SE expire (Cert. No. 4; 43 U.S.C § 869-3)

**2018:** Phoenix leases Facility in 33SE to Scottsdale; Scottsdale subleases to Giants

### E.    Plaintiffs' Action

12          Plaintiffs are residents of Tempe and Scottsdale who challenge the Giants' use of

13   the Facility under the lease agreements described above. (Compl. at 1.)  This Court

14   dismissed Plaintiffs' claims under the LWCFA, FPA, and Contracts Clause of the U.S.

15   Constitution on July 9, 2021.  MTD Order at 4-5, 7.  Plaintiffs' only remaining claim is

16   under the Property Clause.  *Id.* at 7.

### ARGUMENT

19          To survive a Rule 12(b)(6) motion, Plaintiffs must allege "sufficient factual matter,

20   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

21   556 U.S. 662, 678 (2009) (citation omitted).  In adjudicating a Rule 12(b)(6) motion, the

22   Court may consider the complaint as well as "documents attached to the complaint,

23   documents incorporated by reference in the complaint, or matters of judicial notice."

24   *Greiff v. Life Ins. Co. of N. Am.*, 386 F. Supp. 3d 1111, 1113 (D. Ariz. 2019) (quoting

25   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  Thus, the Court is not

26   required to accept as true "allegations that contradict matters properly subject to judicial

27   notice or by exhibit."  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th

28   Cir. 2014); *see also Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 767 (D. Ariz.

2012).  And a plaintiff can "plead himself out of a claim" by including "details contrary to his claims."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

That is precisely what Plaintiffs have done here.  The Complaint alleges all the facts and attaches all the records the Court needs to resolve their Property Claim as a matter of law.  To make out such a claim, Plaintiffs must, at a minimum, show that property interests of the federal government are involved.  *See United States v. Davis*, 872 F. Supp. 1475, 1484 n. 28 (E.D. Va. 1995), *aff'd*, 98 F.3d 141 (4th Cir. 1996) ("[T]he Property Clause cannot be properly invoked … unless some actual and substantial property interest of the federal government is involved." (quotation marks and citation omitted)); *see also, e.g.*, *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1181 (D. Nev. 2015) ("The key to a successful Property Clause challenge is that the federal government either held a deed of trust against, or owned, the property.").  Both federal property right theories Plaintiffs put forward are legally incorrect:  Plaintiffs' theory under the 1937 Patent is foreclosed by statute on the facts alleged.  And Plaintiffs' theory under the 1997 Patent is contradicted by the public land records described in and attached to the Complaint, as well as the judicially noticeable plat.  Plaintiffs' remaining cause of action should be dismissed.

I.   **THE FEDERAL USE RESTRICTION AND REVERSIONARY RIGHT CREATED BY THE 1937 PATENT EXPIRED IN 1984**

Plaintiffs contend that the federal grant to Arizona under the 1937 Patent was subject to a use restriction with a reversionary right in the United States should the restriction be violated.  That restriction would not have precluded the Facility, even while in effect.  But in any event that restriction and reversionary right expired as a matter of law in 1984, as a result of the United States' approval of Arizona's transfer of the land to Phoenix.  It thus cannot provide the basis of a Property Clause claim today.

Plaintiffs acknowledge in their Complaint than in January 1960, Arizona sought and received federal authorization to transfer the Southeast Quarter of Section 33 to Phoenix.  (*See* Compl. at 8, 15; Doc. 1-2 at 4; Doc. 1-3 at 2-3, 9, 15.)  The approval is evidenced by

the "Certificate of Approval of Transfer and Change of Use" ("Certificate No. 4") that Plaintiffs pasted twice into the attachments to the Complaint.  (Doc. 1-3 at 9, 15.)  The Certificate memorializes that on January 1, 1960, the United States "authorized the State of Arizona[] to transfer the lands described below and in Patent No. 1093785 issued November 17, 1937, to the City of Phoenix."  (*Id*. at 15; RJN Ex. D.)  The Certificate goes on to list "Sec. 33, SE ¼" of Township 2 North, Range 4 East.  (*Id*.)

The Certificate further states that the United States' approval of this transfer was "subject to the reversionary provisions of the above noted Act, *terminating 25 years from January 1, 1960*."  (*Id*. [emphasis added].)  The "above noted Act" is the "Act of June 14, 1926; 44 Stat. 741; 43 U.S.C. 869 et seq., as amended" (*id*. [referenced under the document title]), also known as the "Recreation and Public Purposes Act."  As of January 1, 1960 (and to this day), Section 4 of the Recreation and Public Purposes Act provided:

> The Secretary may authorize transfers of title or changes in use in accordance with the provisions of section 3 of this Act [section 869-2 of this title] with respect to any patent heretofore issued under any Act upon application by a [qualified] patentee…. If the Secretary, pursuant to such an application, authorizes such transfer or use, *all reverter provisions and other limitations on transfer or use, under this or any other Act affecting the lands involved, shall cease to be in effect twenty-five years after the Secretary authorizes the transfer or use for a changed or additional purpose* under the provisions of this section.[7]

Pub. L. No. 387, 68 Stat. 173-75, § 4 (1954), *codified at* 43 U.S.C. § 869-3 (emphasis added).

Under Section 4 of the Recreation and Public Purposes Act, the United States' approval of the transfer to Phoenix triggered an automatic 25-year sunset for "all reverter provisions and other limitations on transfer or use, under . . . this title or any other Act

---

[7] Section 4 of the Recreation and Public Purposes Act was added by Pub. L. No. 387 on June 4, 1954.  *See* 68 Stat. 175 (1954).  Thus, the 1937 Patent was a "patent heretofore issued under any Act," subject to this provision.  43 U.S.C. § 869-3.

affecting the lands involved." 43 U.S.C. § 869-3. Thus, the reverter provisions and restrictions imposed on the Southeast Quarter of Section 33 by the 1930 Act and the 1937 Patent implementing the 1930 Act ceased to be operative 25 years after the United States approved Arizona's transfer of the land to Phoenix—*viz.*, after December 31, 1984.

Plaintiffs' position on the effect of the United States' 1960 approval reflects a misreading of the law. Specifically, Plaintiffs contend that Public Law No. 86-292, which went into effect several months before the United States approved the transfer from Arizona to Phoenix, "repealed" the 25-year sunset provision under Section 4 of the Recreation and Public Purposes Act. Plaintiffs are incorrect. Public Law No. 86-292 struck the final sentence of *Section 3* of the Recreation and Public Purposes Act. *See* Pub. L. No. 86-292, § 2, 73 Stat. 571 (Sept. 21, 1959). But Section 3 does not contain the relevant sunset provision. Rather, the sunset provision triggered by the United States' 1960 approval is in *Section 4* of the Recreation and Public Purposes Act, which was not affected by Public Law No. 86-292.[8]

Prior to September 21, 1959, *Section 3* of the Recreation and Public Purposes Act had provided that grantees could not transfer land or change the use without consent of the Secretary, that any attempt to do so would result in title reverting to the United States, and (in its final sentence) that "[t]he provisions of this section, however, shall cease to be in effect as to any lands patented under this Act twenty-five years after the issuance of patent for such lands." *See* Pub. L. No. 387, § 3, 68 Stat. 175 (June 4, 1954), *codified at* 43 U.S.C. § 869-2. Public Law No. 86-292 struck the last sentence of Section 3, so Section 3 would continue operating even beyond 25 years after a patent had issued. But Public Law No. 86-292 made no change to Section 4. Section 4 continued to state in 1960, as it did when enacted in 1954 and as it does to this day, that upon the Secretary's approval of a transfer, all reverters and restrictions under the Recreation and Public Purposes Act or any other act cease to be in effect 25 years after the approval. *See* Pub. L. No. 388, § 4, 68

---

[8] Plaintiffs' confusion may stem from the fact that Section *4* of the Recreation and Public Purposes Act is codified at 43 U.S.C. § 869-*3*.

1   Stat. 175 (June 4, 1954); 43 U.S.C. § 869-3.

2       In short, the facts alleged in Plaintiffs' Complaint and its attachments, as well as the

3   statutes cited therein, make clear that any reverter or restriction on use of the land

4   underlying the Facility (indeed, all of the Southeast Quarter of Section 33) expired as a

5   matter of federal statutory law in 1984.  According to Plaintiffs' own allegations, the

6   Office of the Solicitor for the U.S. Department of the Interior concurs in this analysis.  The

7   Complaint alleges that the Solicitor's Office has repeatedly informed Plaintiffs that any

8   federal use restriction or reversionary interest expired in December 1984 and that the

9   United States therefore "has no ownership interest, reversionary or otherwise, that allows it

10  to take any actions associated with the park" and "has no interest in [this] matter."

11  (Compl. 8, 15-16; Doc. 1-3 at 7, 12, 15.)  This Court can and should conclude the same as

12  a matter of law based on a federal statute and the allegations and historical records

13  contained in Plaintiffs' own pleadings.

14  **II.     THE 1997 PATENT DID NOT CONVEY THE LAND UNDERLYING THE FACILITY AND THUS HAS NO BEARING ON ITS USE**

15      The second federal use restriction that Plaintiffs rely on stems from the 1997 Patent.

16  Plaintiffs point to the 1997 Patent as evidence that the Facility remains subject to a use

17  restriction *despite* the 1960 approval of transfer and resulting 1984 expiration.  (*See, e.g.*,

18  Compl. at 3 [alleging, as evidence that use restrictions did not "expire[] in 1985," that the

19  restrictions "were reaffirmed in land patents issued for Papago Park by the US in 1997"],

20  7-8 [same].)  There is an incurable legal flaw in this theory too:  The 1997 Patent *did not*

21  *convey* the land on which the Facility sits, and its terms are therefore entirely irrelevant.

22      As described above, the 1997 Patent, which is attached to the Complaint, granted

23  from the United States to Phoenix four lots, including Section 33, lot 2.[9]  (Doc. 1-2 at 5-7.)

24

25  ───────────────

26  [9] The other three lots, in sections 4 and 5 of a different township, are irrelevant as Plaintiffs allege the Facility is in section 33.  (*See* Doc. 1-2 at 4 [Plaintiffs' annotation "[t]he baseball Facility under construction is in Section 33"]; Doc. 1-3 at 3 [similar]; Doc. 1-1 at 18 [legal description of Facility property, attached to Complaint]; *see also* RJN Ex. C [plat showing lots in sections 4 and 5 of Township 1 N, Range 4 E.)

28

As also explained above, and illustrated in the official plats and Figures 2 and 3, Section 33, lot 2 is in the *Southwest* Quarter of Section 33; whereas the Facility is in the *Southeast* Quarter of Section 33.

That the 1997 Patent did not involve the land underlying the Facility is further confirmed by the facts and public records included in Plaintiffs' Complaint.  The *entire* Southeast Quarter of Section 33 (where the Facility is located) was granted by the United States to Arizona in the 1937 Patent, pursuant to the 1930 Act, and then conveyed by Arizona to Phoenix in 1964.  (*See* Doc. 1-2 at 1-3 [1937 Patent]; *id.* at 8 [1964 indenture]; Pub. L. No. 92, 46 Stat. 142 [1930 Act].)  Thus, at the time the United States granted lot 2 of Section 33 to Phoenix in the 1997 Patent, Phoenix *already owned* the Southeast Quarter of Section 33.  In other words, the United States no longer had title to and could not have conveyed any land in the Southeast Quarter of Section 33, which is where the Facility resides.  *See, e.g.*, *Noyes v. Mantle*, 127 U.S. 348, 351 (1888) ("A patent of the government cannot, any more than a deed of an individual, transfer what the grantor does not possess."); *Swendig v. Wash. Water Power Co.*, 281 F. 900, 903 (9th Cir. 1922).

The United States' transfer to Phoenix of lot 2 of Section 33 in 1997 is explained by the fact that lot 2 is part of the *Southwest* Quarter of Section 33.  As explained above, the 1930 Act had reserved the Southwest Quarter of Section 33 for military use by the Arizona National Guard, and so it was not transferred in the 1937 Patent.  *See* Pub. L. No. 92, § 1, 46 Stat. 142 (providing that certain tracts of land, including "the *southwest quarter* [of] section 33 … shall be … reserved for military purposes for use of the National Guard of Arizona as a rifle range." [emphasis added]).  Because the United States had retained ownership of the Southwest Quarter of Section 33, it was in a position in 1997 to grant to Phoenix one of the two lots within that quarter.  (*See* Doc. 1-2 at 5-7.)

By its plain terms, the 1997 Patent and restrictions it imposes apply only to the lands conveyed by that instrument.  (*See* Doc. 1-2 at 5-7.) *Cf. City of Las Vegas v. Cliff Shadows Prof'l Plaza*, 129 Nev. 1, 7 (2013) ("In interpreting a federal land patent, we look to the patent's specific language."); *accord United States v. Union Pac. R.R. Co.*, 353 U.S.

112, 116 (1957) ("clear language" of land grant determines what is conveyed).  Because the 1997 Patent did not convey the land underlying the Facility, its terms are legally irrelevant and have no bearing on use of the Facility.

### III.   BECAUSE THESE LEGAL DEFICIENCIES CANNOT BE CURED, THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

These legal deficiencies in Plaintiffs' Property Clause claim cannot be cured by amendment.  There is no set of facts Plaintiffs could plead that would change the legal reality that the use restrictions and reverter set forth in the 1937 Patent expired in 1984, and that the 1997 Patent does not touch the land on which the Facility sits.  Dismissal with prejudice is proper where, as here, the deficiencies cannot be cured by amendment and leave to amend would thus be futile.  *See, e.g.*, *Flower v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court … does not abuse its discretion in denying [a *pro se* litigant] leave to amend where amendment would be futile."); *Clarke v. Ryan*, No. CV-14-01810-PHX-JJT, 2015 WL 4041222, at *2 (D. Ariz. July 1, 2015) (dismissal of *pro se* complaint without leave to amend is proper "when amendment would be futile because as a matter of law, the defect cannot be cured"); *Fressadi v. Glover*, No. CV-16-03260-PHX-DJH, 2017 WL 5705830, at *15 (D. Ariz. Sept. 14, 2017) (dismissing with prejudice claims of *pro se* plaintiff due to fatal legal deficiencies).

### CONCLUSION

Plaintiffs' remaining Property Clause claim reflects a misapprehension of the title records that can, and should, be resolved as a matter of law based on the facts alleged.  Plaintiffs' misimpressions are unequivocally controverted by the title records attached to the Complaint and the federal law applicable to those records.  Because the facts alleged in Plaintiffs' pleadings and federal statutory law directly contradict Plaintiffs' legal theories, and these deficiencies cannot be cured by amendment, the Giants respectfully request that the Court dismiss the Complaint with prejudice.

1   Dated:  September 21, 2021.

**MUNGER TOLLES & OLSON LLP**

2

3   By:  *s/ Eric P. Tuttle*

4          Eric P. Tuttle (CA Bar No. 248440*)
5          **MUNGER, TOLLES & OLSON LLP**
           350 South Grand Avenue, Fiftieth Floor
6          Los Angeles, California 90071-3426

7          Stephanie G. Herrera (CA Bar No.
8          313887*)
           **MUNGER, TOLLES & OLSON LLP**
9          560 Mission Street, Twenty-Seventh Floor
10         San Francisco, California 94105-2907
           *Pro Hac Vice*
11
12         John H. Gray (#028107)
           **PERKINS COIE LLP**
13         2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788
14
15         *Attorneys for Intervenor-Defendant*
           *San Francisco Giants Baseball Club LLC*
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

☒      I hereby certify that on September 21, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

☒      I hereby certify that on September 21, 2021, I served the attached document by first class mail on Chief Judge G. Murray Snow, United States District Court of Arizona, Sandra Day O'Connor U.S. Courthouse, Suite 622, 401 West Washington Street, SPC 80, Phoenix, AZ 85003-2161.

☒      I hereby certify that on September 21, 2021, I served the attached document by first class mail on the following, who are not registered participants of the CM/ECF system:

Lasse Norgaard-Larsen
1187 Cherry Gulch Rd.
Durango, CO 81301
*Plaintiff Pro Se*

J. Arthur Deal
5936 East Cambridge Avenue
Scottsdale, Arizona 85257
*Plaintiff Pro Se*

*s/ Stephanie Lawson*