**United States District Court**
**for the District of Arizona**

| | |
|---|---|
| **Lasse Norgaard-Larsen, et al.,** **Plaintiffs** v. **City of Phoenix, et al.,** **Defendants** | No. 20-cv20-02467-PHX-GMS **PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES AND MOTION TO DISMISS** (Assigned to the Honorable G. Murray Snow) |

The purpose of this is to petition the Court to reject the Intervenor-Defendant's Motion to Dismiss filed 9/21/21 (Document 43). That motion, while based upon thorough and extensive research into the legal and land record history on Papago Park, particularly that relating to the Section 33 wherein the Giant's baseball facility is located, errs in that it overlooks simple, fundamental facts that refute all arguments presented in that Response and Motion.

In simple terms, the gist of the claim by the Intervenor-Defendant, attorneys for the San Francisco Giants Baseball Club, LLC, is that the area in which the baseball facility is located has no land-use protections for the following two reasons: I. the twenty-five-year expiration clause in the Certificate of Approval of Transfer and Change of Use, dated January 1, 1960 (Exhibit A) ended reversionary provisions (to the U.S., in case of non-compliance with use restrictions) after 1984. The expiration clause cited is from an amendment in Public Law 387 of June 4, 1954 (68 Stat. 173, Exhibit B), added to the 1926 Recreation Act (44 Stat. 741). That amendment, and its inclusion in the Certificate of Approval of Transfer and Change of Use is, according to the Defendant, the basis for their claim that any "park only" restrictions are invalid, and Papago Park

lands can be used for any purpose deemed relevant to the interests of the City of Phoenix, and II. The restrictions in the 1997 Patent do not apply, because the baseball training facility is not located within the lot/tract specified for Section 33 in that document. This position is based upon copious research into land patent data and historic land office (GLO) records, included in their Motion.

It is important to consider that, if such arguments by the Interventor-Defendant are valid, all use restrictions and reversionary provisions for the entirety of Papago Park have expired, since there are four Certificates of Approval of Transfer and Change of Use that cover all of Papago Park.  The reason for the multiple documents is that the 1954 law limited transfers to 640 acres per year, so at least four instruments were required to complete the transfer of the whole park.  Therefore, by this logic, Papago Park is not really a park, just land owned by the City of Phoenix, available for any use, whether a skating arena, as attempted in 2010, commercial development, as in the case of an Urban Land Institute project (2009-2011), a private corporate baseball training compound, or even a McDonald's at the Hole-in-the-Rock.  Therefore, in this case, under these assumptions, Papago Park—instead of having more protections than any park in America, as has long been proclaimed by the Plaintiffs—has absolutely no protections and therefore the construction of a private, non-public, restricted-access corporate compound is a legitimate use of land.

The 1954 law used by the Defendants to attest that all use restrictions and reversionary provisions expired December 31, 1984, was more of a rewrite and expansion of the 1926 Recreation Act (44 Stat 741, 43 U.S.C., Sec 869) than a simple amendment, adding or changing a few items.  Evidently much discussion went into these changes, to loosen restrictions on public land use. A congressional report (Exhibit D) relating to this proposed law shows an intense desire to "broaden" the 1926 law's application to "promote maximum utilization and development" of public lands "without the rigidity of the existing reverter clause which permanently restricts the lands conveyed to a

single use." This can almost be considered an attempt by commercial interests allied to sympathetic government officials, induced by lobbyists, to slacken control of public lands for unknown but suspect purposes.   The 1954 Act changed "recreational purposes" to "public purposes", added non-profits to entities eligible to receive lands and introduced the twenty-five-year expiration clause.  While 'utilization and development' might have made sense in 1926, when Phoenix was a small town in a scarcely populated state, or even in 1954 when Papago Park—often described as "eight miles East of Phoenix—was one contiguous piece of land without the artificial divisions imposed by McDowell Road and Galvin Parkway, with over 90% of its land still in its native Sonoran desert state, in the third decade of the Twenty-first Century, the situation of the State, City and Park are very different. Papago Park is very valuable land in the very center of one of the largest metropolitan areas in the country, surrounded by urban encroachments on all sides, with a greatly reduced desert footprint. Less than 33% of Papago Park was classified as "undisturbed dessert" in the 2010 Master Plan and since then, in the last dozen years, even more desert areas have been destroyed, as demonstrated in the initial Complaint filed December 23, 2020.

The tendency to divert park lands from public and recreational use for other purposes has been such that citizens and lawmakers sensed the need to codify the ancient principle of parks as inviolate public spaces. Title 40 U.S. Code §550, relating to Property for Use as a Public Park or Recreation Area, states that "the deed of conveyance of any surplus real property disposed of under this subsection: (A) shall provide that all of the property be used and maintained for the purpose for which it was conveyed in perpetuity, and that if the property ceases to be used or maintained for that purpose, all or any portion of the property shall, in its then existing condition, at the option of the Government, revert to the Government; and (B) may contain additional terms, reservations, restrictions, and conditions the Secretary of the Interior determines are necessary to safeguard the interests of the Government." Note also that Public Law 89-670 says "It is hereby declared to be the national policy that special effort should be

made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites." The keyword in that statement is 'preserve.' This stated national policy has been incorporated, in some form and manner, into all instruments of conveyance and legislation for Papago Park, since 1914. This policy is illustrated in an information sheet produced by the Bureau of Land Management (Exhibit F).

For reasons unknown, the Intervenor-Defendant' insists that the Plaintiff's 'Park, Recreation and Public Convenience-only' claims under the Property Clause of the U.S. Constitution consist solely of the phraseology in the 1937 and 1997 Patents. In fact, the Plaintiffs have repeatedly cited other documents of conveyance, including the 1930 Act to Abolish Papago Saguaro National Monument (46 Stat. 142) and the 1959 Certificate of Purchase, both of these found in the Lease and in the Plaintiff's Complaint of December 23, 2020. The fact is that the 1959 Certificate of Purchase and the 1964 Deed constitute a contractual relationship between the State of Arizona and the City of Phoenix that require adherence to the restrictions in the 1937 Patent and again to the same park-only "reservations, restriction and conditions contained in Section 41-511.17 and 23-231, Arizona Revised Statues."  Thus, in the 1964 Deed, the City of Phoenix accepted the use restrictions enacted by the U.S., and again, separately, in the same document, the same restrictions imposed by the State of Arizona. This action raises an interesting legal question of whether an expiration of the federal restrictions after twenty-five years, as argued by the Interventor-Defendant, annuls at the same time the separate but almost identical restrictions imposed by the state in that same document. The Plaintiffs, although inexperienced in legal theory, think not. One thing is certain, the Defendants are in violation of the terms of the Deed, since neither the names of the City of Scottsdale nor the Giants are found among the seven permitted leases allowed for Papago Park—leases which still exist until today. Note, that the area occupied by the Giants' compound in Papago Park—43 acres—is almost exactly the same area as that ceded to the City of Tempe in the 1964 document.

If use restrictions have been removed, then the Defendants have obtained absolute sovereignty over certain areas of Papago Park, or even all areas of the Park, to the extent that any use, public or private, recreational or commercial, is allowable. This is contrary to the concept of public trust, under which certain common properties, particularly parks, are held in trust in perpetuity for the free and unimpeded use of the general public, now and in the future. The principles enshrined in Title 40 U.S. Code §550 and Public Law 89-670 are nothing but a formalization of this ancient Common Law principle of the Public Trust Doctrine. Perhaps the preeminent case for this idea is *Smith v. City of Westfield* (278 Mass. 49, 2017) in which the court ruled that when land is dedicated permanently as a public park and used as a public park, even without a recorded instrument, the public obtains an interest in the land which is "irrevocable." A related doctrine is that of "Prior public use" (*Florida East Coast Ry. Co. v. Citi of Miami,* (372 So.2nd 152, 157) that denies that a property devoted to an existing public use can be taken and appropriated for another or different public use unless there is legislative intent to do so.

The Interventor-Defendant places excessive reliance on 43 U.S. Code § 869–3, a codification of the twenty-five-year expiration principal, which states

> "The Secretary may authorize transfers of title or changes in use in accordance with the provisions of section 869-2 of this title with respect to any patent heretofore issued under any Act upon application by a patentee qualified to obtain a conveyance under section 869–1(a) or 869–1(c) of this title. If the Secretary, pursuant to such an application, authorizes such transfer or use, all reverter provisions and other limitations on transfer or use, under sections 869 to 869–4 of this title or any other Act affecting the lands involved, shall cease to be in effect twenty-five years after the Secretary authorizes the transfer or use for a changed or additional purpose under the provisions of this section."

The keywords in this case are "heretofore" and "such transfer and use." The first meaning it only applies to patents issued after the amendment of June 4, 1954, which is

not the case of Papago Park. Note also that the 'transfer and use' in the 1960 Certificate (Exhibit A), that includes the twenty-five-year rule—howbeit a rule already repealed—refers to park and recreation use and the building of a stadium. There was a transfer, from the US to Arizona, but there was no change of use because that area of the park was already used as a park, and the stadium in that document—not to be confused with the Giant's baseball facility—was built in another section of Papago Park.

The twenty-five-year expiration clause, included in the Act of June 4, 1954, and repealed on September 21, 1959, is somewhat bewildering, so much that the Bureau of Land Management (BLM) felt the need to include a chapter in its operations manual (Exhibit E) to attempt to clarify the application of that clause. BLM Manual Transmittal Sheet, Release 2-258, Date 7/1/88, concerning Subject 2740 – Recreation and Public Purposes, intended to provide guidance for lease and conveyance of certain public lands under the Recreation and Public Purposes Act, states the following:

> .3 Reversion of Title
>
> .31 Prior to 1926. Until enactment of the Recreation Act of June 14, 1926 (44 Stat. 741) grants of public lands for recreational purposes were made by special legislation. For such grants, the authorizing officer must look to the particular statute under which the patent was issued, and to the language of the particular patent, to determine whether there is a provision for reversion of the title and, if so, upon what basis the provision becomes operative.
>
> 32 Subsequent to the 1926 Act. All patents issued under the Act of June 14, 1926 (44 Stat. 741), supra, for the period between June 14, 1926 and June 4, 1954 and all patents issued after September 21, 1959, when the amendatory Act (73 Stat. 571) was enacted, contain a perpetual reversionary clause. Those patents that were issued during the intervening period between June 4, 1954 and September 20, 1959, contain a 25-year limitation on the reverter which, in all cases, has expired. With respect to existing reverter provisions, the reverter shall be exercised at any time it is determined that the conditions specified in 43 CFR

>2741.9 exist. The authorized author shall review the provisions of the patent to ensure that reversion of the title is consistent therewith.
>
>.33 <u>Exceptions to the Perpetual Reverter.</u> The Act of June 4, 1954, (43 U.S.C. 869-3), provides authority to permit transfers of title and changes of use for any patents issued prior to June 4, 1954, including pre-R&PP Act grants (i.e. prior to June 14, 1926) The 1954 Act provides that upon BLM approval of the transfer or use changes, all reverter provisions and other limitations on transfer or use contained in the patent shall cease to be in effect 25 years after the approval. However, caution must be exercised in applying the Act to pre-R&PP Act grants. The Act can neither impose any new restrictions on such grants, nor, except as to the duration of the reverter provision, alter the terms and conditions of the reversionary clause. Pre-R&PP Act grants (i.e., patents issued prior to June 14, 1926) must be examined to determine in what circumstances the reverter can be enforced. The authorized officer shall consult the Field Solicitor on all requests for transfers of title or changes of use involving pre-R&PP Act grants.

If nothing else, this case, relating to the use of Papago Park, is an interesting study of park and recreation land legislation, particularly when a reverter provision is found in any document of conveyance.  It appears that the issue is delicate and, depending on the document, may require expert legal opinion from the Department of the Interior (DOI). One thing is certain, that, after September 21, 1959, in keeping with U.S. policy and legislation, no expiration clause for reversionary provisions appears in any BLM or DOI-related public land transaction.

The Plaintiffs view the participation of the Department of the Interior (DOI) in this case to be important, even fundamental, given that the issues herein are dependent on policies and decisions by that entity.  The Plaintiffs have, at times, reached out to agencies of that Department to obtain information, with limited success.  In fact, the

DOI is withholding 38 pages of FOIA documents, under Rule 5, from meetings that appear to have been about ownership and residual obligations relative to Papago Park. The Plaintiffs appealed for the release of these pages on August 10 and 11, 2021, but no response has been received. The content of those pages, a position statement from the Department of the Interior, or even a joining of the Department of the Interior to this case may be necessary, should any Court-sponsored mediation conference be unfruitful.

At this point a recapitulation of the legal history is merited. Papago Park was established, in its original form, as Papago Saguaro National Monument (Exhibit I) on January 21, 1914 by Presidential Proclamation (38 Stat. 1991) under the Antiquities Act of June 8, 1906 (34 Stat. 225). It specifically includes the "south-east quarter of section 33" and states that the preservation of such lands is in the "public interest." The Act to abolish Papago Saguaro National Monument (46 stat. 142) of April 7, 1930 states that certain lands in the said Papago Saguaro National Monument "shall be, and the same are hereby, granted to the State of Arizona for recreation, or public-convenience" and "Provided further that the lands used by State and the city of Tempe, Arizona, hereby granted shall be used by the State of Arizona and the city of Tempe, Arizona, only for the purposes herein indicated, and if the said lands, or any part thereof, shall be abandoned for such use, such lands or such part shall revert to the United States." The initial patent transferring the Papago Park to the State of Arizona, dated November 17, 1937 (Patent 1093785) and signed by Pres. Frank. Roosevelt (found both in the Lease and in the Complaint of December 23, 2020) states "this patent is issued upon the express condition that the lands so granted will be used for municipal, park, recreation, or public-convenience purposes." Public Law 36 (Exhibit H), approved May 13, 1955, authorizing the title transfer by the U.S., explicitly includes park and recreation use restrictions. The Conditional Certificate of Purchase No. 1, signed July 30, 1959 (also found in the Lease and Complaint) again contains a "municipal, park, recreation or public-convenience purposes" restriction statement. Finally, the Deed of sale of Papago

Park, from Arizona to the City of Phoenix for $3,529.02, signed on August 11, 1964, reaffirms the "park only" use restrictions mentioned in the previous documents.

The Plaintiffs will now directly address the two claims made in the Intervenor-Defendant's Motion to Dismiss filed 9/21/21.

I. <u>The Restrictions and Reversionary Rights for Papago Park expired in 1984.</u>

- First and foremost, Papago Park is a park and has been since used as a park since 1914, and, as such, is entitled to protection as a public place under the doctrines of Public Trust and Prior Use, mentioned above. This simple belief—that Papago Park is a park and should not be given to a private corporation—was the motive that caused the Plaintiffs to send hundreds of emails to officials, in 2020, prior to embarking on a judicial solution. In other words, the Plaintiff's initial motivation was limited to the commonsense belief about the improper use of public park land; the legalities of title documents, U.S. legislation, and a lawsuit came later, after common sense and city officials failed to protect public land.

- The only relevant title document that has the twenty-five-year expiration clause is the Certificate of Approval of Transfer and Change of Use No. 4 (Exhibit A), dated January 1, 1960 (Note the document referenced in the Lease, No. 1, signed April 28, 1959, is for a different area of Papago Park). The "terminating 25 years from January 1, 1960" phrase should not have been included in that document, because that expiration clause had been repealed on September 21, 1959, a little more than three months earlier.

- All of the documents listed above contain public-use restrictions and all but one identify the Southeast quarter of Section 33 as part of Papago Park. None of these documents—from 1914, 1930, 1937, 1955, 1959 and 1964— mention either the Recreation Act of June 14, 1926 (44 Stat 741) or the amendment of June 4, 1954 (68 Stat. 173), adding the twenty-five-year

expiration clause. It seems unlikely that a clause not found in the instruments of conveyance, citing a law also not found in those documents—except that one case erroneously included in the preceding item—should overrule six title documents and even Presidential Decrees and Acts of Congress.

- Papago Park is not and never has been subject to the Act of June 14, 1926, much less the expiration clause, added June 4, 1954 and repealed on September 21, 1959.

- Papago Park was not created by a grant or under the terms of transfer found in Bureau of Land Management and National Park Service instructions for the petition, authorization, and transfer of federal lands to state and local entities—all of which require perpetual 'park only' clauses (Exhibit F). The only 'reverter' clauses in the mentioned title documents are for violation of the 'park-only' provisions, which run with the land, and which the Defendants have violated.

- As if state and federal use reservations are not enough, City of Phoenix Ordinance No. S-1445 (Exhibit G), approved February 10, 1959, clearly indicates that the purchase of said Papago Park is for park purposes, paid from the 1957 park bond fund to "the benefit and advantage of the citizens of the City of Phoenix."

II. <u>The 1997 Patent does not apply to the land wherein the baseball facility is located.</u>

- As stated previously, the Intervenor-Defendant's present a detailed explanation of why the 1997 Patent does not apply to a certain area of Section 33, where the baseball facility is found. The need to exclude that document is because it contains use restrictions without any expiration clause. The logic for citing this document by the Plaintiffs was to show that the use limitations which had supposedly expired in 1984, twenty-five years

after the 1959 Certificate of Approval of Transfer and Change of Use, were still alive and well in 1997.

- The Defendants make a well-documented case, with detailed plats and maps, that the sub-area of Section 33 (specifically, Lot 2) in the 1997 Patent (which includes the usual use restrictions plus added civil rights protections missing from prior documents of conveyance) is not that in which the baseball facility is located, although the Defendants does recognize that all of the Southeast quarter of Section 33, in which the facility is located, was transferred to Phoenix in the 1937 and 1964 documents of conveyance. Therefore, because all of the area wherein the baseball training facility is located is included not just in the 1937 and 1964 documents, but also in in the 1930 and 1959 documents mentioned above in Response I, all of which have the usual, required "park-only" protections, this argument is irrelevant.

The Plaintiffs find the Intervenor-Defendant's position, based upon incorrect details and irrelevant facts, to be without merit, and therefore request that this U.S. District Court reject their Motion to Dismiss.

　　　Dated this 3rd day of October, 2021

　　　By

_/s/ Lasse Norgaard-Larsen_　　　　　　　　　　
Lasse Norgaard-Larsen　　　　　　　　J. Arthur Deal
1187 Cherry Gulch Road　　　　　　　5936 East Cambridge Avenue
Durango, CO  81301　　　　　　　　　Scottsdale, Arizona 85257
Plaintiff *Pro Se*　　　　　　　　　　　Plaintiff *Pro Se*

# CERTIFICATE OF SERVICE

The Plaintiffs hereby certify that on October 3, 2021, they served the attached document and exhibits electronically on the following Defendants:

Robert A. Hyde
Assistant City Attorney
Attorney for the City of Phoenix
200 West Washington, Suite 1300
Phoenix, Arizona 85003-1611
Robert.hyde@phoenix.gov

Eric C. Anderson
Senior Assistant City Attorney
City of Scottsdale
3939 N. Drinkwater Blvd.
Scottsdale, Arizona 85251
ecanderson@scottsdaleaz.gov

Eric P. Tuttle
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th floor
Los Angeles, California 90071-3426
Eric.tuttle@mto.com
Attorney for Defendant San Francisco Baseball Club LLC

John H. Gray
Perkins COIE
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
jhgray@perkinscoie.com
Attorney *Pro Hac Vice* for Defendant San Francisco Baseball Club LLC

By:

_/s/ Lasse Norgaard-Larsen_
Lasse Norgaard-Larsen        J. Arthur Deal