# Exhibits

# Exhibit A

**Certificates of Approval of Transfer and Change of Use. The one dated June 16, 1959 (Left), erroneously included in the Lease, and the one from January 1, 1960, relating to the actual area of the baseball training facility, Section 33, dated January 1, 1960 (Right). The wording and content are basically identical, only the land description and dates are different. These both contain the 25-year expiration clause, repealed on September 21, 1959**



# Exhibit B

### The law adding the 25-year reverter clause

**Public Law 387**                        **CHAPTER 263**

**AN ACT**

To amend the Recreation Act of June 14, 1926, to include other public purposes and to permit nonprofit organizations to purchase or lease public lands for certain purposes.

                                                      June 4, 1954
                                                      [H. R. 1815]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Act approved June 14, 1926 (44 Stat. 741; 43 U. S. C., sec. 869), entitled "An Act to authorize acquisition or use of public lands by States, counties, or municipalities for recreational purposes", is hereby amended to read as follows:

                                                       Public lands.
                                                       [68 STAT.

*Disposal for public or recreational purposes.*

"SECTION 1. (a) The Secretary of the Interior upon application filed by a duly qualified applicant under section 2 of this Act may, in the manner prescribed by this Act, dispose of any public lands to a State, Territory, county, municipality, or other State, Territorial, or Federal instrumentality or political subdivision for any public purposes, or to a nonprofit corporation or nonprofit association for any recreational or any public purpose consistent with its articles of incorporation or other creating authority. Before the land may be disposed of under this Act it must be shown to the satisfaction of the Secretary that the land is to be used for an established or definitely proposed project. The Secretary may classify public lands in Alaska for disposition under this Act. Lands so classified may not be appropriated under any other public land law unless the Secretary revises such classification or authorizes the disposition of an interest in the lands under other applicable law. If, within eighteen months following

*Limitations.*

"(b) No more than six hundred and forty acres may be conveyed to any one grantee in any one calendar year.

"(c) Where the lands have been withdrawn in aid of a function of a Federal department or agency other than the Department of the Interior, or of a State, Territory, county, municipality, water district, or other local governmental subdivision or agency, the Secretary of the Interior may make disposals under this Act only with the consent of such Federal department or agency, or of such State, Territory, or local governmental unit. Nothing in this Act shall be construed to apply to lands in any national forest, national park, or national monument, or national wildlife refuge, or the revested Oregon and Cali-

*Title transfer.*

"SEC. 3. Title to lands conveyed by the Government under this Act may not be transferred by the grantee or its successor except, with the consent of the Secretary of the Interior, to a transferee which would be a qualified grantee under section 2 (a) or (c) and subject to the acreage limitation contained in section 1 (b) of this Act. A grantee or its successor may not change the use specified in the conveyance to another or additional use except, with the consent of the Secretary, to a use for which such grantee or its successor could obtain a conveyance under this Act. If at any time after the lands are conveyed by the Government, the grantee or its successor attempts to transfer title to or control over these lands to another or the lands are devoted to a use other than that for which the lands were conveyed, without the consent of the Secretary, title to the lands shall revert to the United States. The provisions of this section, however, shall cease to be in effect as to any lands patented under this Act twenty-five years after the issuance of patent for such lands.

*Authorization.*

"SEC. 4. The Secretary may authorize transfers of title or changes in use in accordance with the provisions of section 3 of this Act with respect to any patent heretofore issued under any Act upon application by a patentee qualified to obtain a conveyance under section 2 (a) or (c) of this Act. If the Secretary, pursuant to such an application, authorizes such transfer or use, all reverter provisions and other limitations on transfer or use, under this or any other Act affecting the lands involved, shall cease to be in effect twenty-five years after the Secretary authorizes the transfer or use for a changed or additional purpose under the provisions of this section.

Approved June 4, 1954.

# Exhibit C

**The law repealing the 25-year reverter clause ("the last sentence of Section 3")**

73 STAT.]       PUBLIC LAW 86-294—SEPT. 21, 1959                                571

Public Law 86-292

AN ACT

To amend the Act of June 14, 1926, as amended by the Act of June 4, 1954    September 21, 1959
(68 Stat. 173; 43 U.S.C., sec. 869).    [S. 1436]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That subsection (b) of section 1 of the Act of June 14, 1926, as amended by the Act of June 4, 1954 (68 Stat. 173, 174; 43 U.S.C. 869), is further amended to read as follows:    Public lands.

"(b) Conveyances made in any one calendar year shall be limited as follows:    Recreational use. Acreage limitation.

"(i) For recreational purposes:

"(A) To any State, for not more than three sites, six thousand four hundred acres in all, except that during each of the calendar years 1960, 1961, and 1962, conveyances may be made for not more than six sites, comprising a total of not more than twelve thousand eight hundred acres and, in addition thereto, such acreage as may be needed for small roadside parks and rest sites of not more than ten acres each.

"(B) To any political subdivison of a State, six hundred and forty acres.

"(C) To any nonprofit corporation or nonprofit association, six hundred and forty acres.

"(ii) For public purposes other than recreation:

"(A) To any State or agency or instrumentality thereof, for any one program, six hundred and forty acres.

"(B) To any political subdivision of a State, six hundred and forty acres.

"(C) To any nonprofit corporation or nonprofit association, six hundred and forty acres."

SEC. 2. The last sentence of section 3 of the Act of June 14, 1926, as amended, is repealed.    **Repeal**

Approved September 21, 1959.

AMENDMENTS

1988—Pub. L. 100–648 designated existing provision as subsec. (a) and added subsecs. (b) and (c). 1959—Pub. L. 86–292 struck out sentence which provided that this section should cease to be in effect as to any lands patented under sections 869 to 869–4 of this title twenty-five years after the issuance of patent for such lands.

# Exhibit D

**Discussion of the changes to the Recreation Act to be included in the 1954 amendment adding the 25-year reverter clause.**

google.com/books/edition/Report/KebjR3d8I-4C?hl=en&gbpv=1&dq=1926+parks+and+recreation+act+twenty-five&pg=RA19-PA9&printsec=frontcover

AMENDING THE RECREATION ACT OF JUNE 14, 1926    5

Section 1 would also make it clear that H. R. 1815 is intended to authorize the disposal of withdrawn lands only if the Government agency having jurisdiction over the lands consents to such disposal. Another provision would wholly exclude from the operation of the bill national forests, national parks and monuments, and Indian lands.

A still further provision in section 1 would restrict the purposes for which lands may be disposed of under H. R. 1815 by providing that no disposition shall "be made under this act for any use authorized under any other law, except for a use authorized under the act of June 1, 1938 (52 Stat. 609; 43 U. S. C., sec. 682a), as amended." That act authorizes the disposition of small tracts of public lands for home, cabin, camp, health, convalescent, recreational, or business sites.

This section of H. R. 1815 would also require the Secretary of the Interior to take into account the possible power value of the lands whether or not they have been reserved or classified for power purposes, before authorizing any disposal of them under H. R. 1815. This provision was made at the suggestion of the Federal Power Commission.

Section 2 of H. R. 1815 would provide that land disposals thereunder should be made only upon the filing of an application for the land by a qualified purchaser or lessee. Section 2 also provides that the lands shall be sold at a price to be fixed by the Secretary through appraisal or otherwise after taking into consideration the purpose for which the lands are to be used. This conforms to the terms of the present Recreation Act, supra, as interpreted by applicable regulations (43 C. F. R. 254.5 (a)).

In view of the fact that a purchaser of public lands under H. R. 1815 would often not be required to pay the full value of the lands, a provision like that in the bill for reverter of the lands to the United States in the event the grantee attempts to alienate them or to divert them to a use other than that for which they have been granted seems fully justified. Section 3 of H. R. 1815 would substitute a new reverter clause for the one now contained in the Recreation Act, supra, to safeguard the use of the land conveyed without the rigidity of the existing reverter clause, which permanently restricts the lands conveyed to a single use and is difficult and expensive to administer. The Department could, under this provision, permit other uses of the lands or transfers of title thereto, where such action would be in the public interest and promote beneficial utilization of the lands.

Finally, section 4 would permit past grantees under the Recreation Act, supra, or under other public land laws, to take advantage of the more flexible provisions described in the preceding paragraph. Twenty-five years after the issuance of a patent under section 3 of H. R. 1815, if enacted, or after a transfer or change of use is authorized under section 4 of the bill in favor of an applicant qualified under section 2 (a), the conditions in the patent and the provision for reversion would become ineffective.

The enactment of this measure should help promote maximum utilization and development of the public lands and the resources on such lands. I would recommend, however, the adoption of two amendments. One is to exclude national wildlife refuges from the bill. These have the same degree of permanency as national forests, national parks, and other areas excluded from the bill. The other amendment would strengthen the "established project" standard in subsection 1 (a) of the bill. These amendments could be made:

(1) By striking out the following words on lines 7 and 8 of page 2 of the bill: "for a purpose other than a recreational purpose.";

(2) By inserting on page 3, line 6, after the word "monument", the following language: "national wildlife refuge."

I note that your committee is considering a proposed amendment to H. R. 1815 to permit the sale of lands to a nonprofit corporation or association. It seems appropriate to indicate at this time that this Department believes such an amendment would be of distinct advantage in promoting maximum utilization of the public lands.

Because of the urgency of your request for our views, this letter is being forwarded without prior advice from the Bureau of the Budget. Consequently, we are unable to inform you of the relationship of our views to the program of the President.

Sincerely yours,

ORME LEWIS,
*Assistant Secretary of the Interior.*

# Exhibit E

**Excerpts from BLM manual discussing difficulties with 25-year reverter clause**

**Page 1**

Form 1-21-2
(June 1969)

🔒 blm.gov/sites/blm/gov/files/Manual%202740%20-%20R%26PP.pdf

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

MANUAL TRANSMITTAL SHEET

Release 2-258
Date 7/1/88

Subject: 2740 - RECREATION AND PUBLIC PURPOSES

1. **Explanation of Materials Transmitted:** This release transmits a completely updated Manual and the accompanying new Handbook which provides guidance for lease and conveyance of certain public lands under the Recreation and Public Purposes (R&PP) Act. Specifically, the Manual provides updated direction on lands subject to disposition, provisions and limitations, reversion of title, and sanitary landfills.

**Page 8**

D. **The Act of June 4, 1954** (68 Stat. 173) amended the 1926 act in its entirety. It broadened the authority of the act to include disposal for "public purposes," and included provisions for disposal to territories (Alaska was not yet a State), other political subdivisions, and nonprofit corporations and associations in addition to States, counties, and municipalities. It limited conveyances to 640 acres annually. The extension of the act to the O & C and CBWR lands made by the 1928 act was deleted. This act provided for transfers of title and changes of use, and limited reverter provisions to 25-year duration, for patents issued thereunder. It also provided authority for transfers of title and changes of use on patents issued under the R&PP Act prior to June 4, 1954, including pre-R&PP grants (i.e., before June 14, 1926), along with a 25-year limitation on the reverter that must attach on approval of such title transfers and use changes. This act also eliminated the term "nonmineral" in describing lands which could be conveyed. It also provided for the conveying of land to governmental entities for historic-monument purposes without monetary consideration.

**Page 9**

F. **The Act of September 21, 1959** (73 Stat. 571) expanded to 6,400 acres the annual acreage limitation for conveyance to States for recreation purposes. This act deleted the 25-year limitation on reverters, making reversions a perpetual limitation on patents issued after that date. However, this act did not disturb the 25-year limitation on reverters imposed by the Act of June 4, 1954, that must attach to authorized transfers of title and changes of use involving patents issued prior to June 4, 1954.

**Page 17**

.3 **Reversion of Title.**

.31 **Prior to 1926.** Until enactment of the Act of June 14, 1926 (44 Stat. 741) grants of public lands for recreational purposes were made by special legislation. For such grants, the authorized officer must look to the particular statute under which the patent was issued, and to the language of the particular patent, to determine whether there is a provision for reversion of title and, if so, upon what basis the provision becomes operative.

.32 **Subsequent to the 1926 Act.** All patents issued under the Act of June 14, 1926, supra, for the period between June 14, 1926, and June 3, 1954, and all patents issued after September 21, 1959, when the amendatory Act of September 21, 1959, 73 Stat. 571, was enacted, contain a perpetual reversionary clause. Those patents that were issued during the intervening period between June 4, 1954, and September 20, 1959, contain a 25-year limitation on the reverter which, in all cases, has expired. With respect to existing reverter provisions, the reverter shall be exercised at any time it is determined that the conditions specified in 43 CFR 2741.9 exist. The authorized officer shall review the provisions of the patent to ensure that reversion of title is consistent therewith.

.33 **Exceptions to Perpetual Reverter.** The Act of June 4, 1954, (43 U.S.C. 869-3), provides authority to permit transfers of title and changes of use for any patents issued prior to June 4, 1954, including pre-R&PP Act grants (i.e., prior to June 14, 1926). The 1954 Act provides that upon BLM approval of the transfers or use changes, all reverter provisions and other limitations on transfer or use contained in the patent shall cease to be in effect 25 years after the approval. However, caution must be exercised in applying the Act to pre-R&PP Act grants. The Act can neither impose any new restrictions on such grants, nor, except as to the duration of the reverter provision, alter the terms and conditions of the reversionary clause. Pre-R&PP Act grants (i.e., patents issued prior to June 14, 1926) must be examined to determine in what circumstances the reverter can be enforced. The authorized officer shall consult the Field Solicitor on all requests for transfers of title or changes of use involving pre-R&PP Act grants.

# Exhibit F

**BLM pamphlet explaining terms and conditions of public land transfers**



# Exhibit G

**City of Phoenix Ordinance authorizing purchase of Papago Park, passed 2/10/1959.**

LBF:el 2/4/59

ORDINANCE NO. S- 1445

AN ORDINANCE AUTHORIZING THE CITY MANAGER TO PURCHASE THE TRACT OF LAND KNOWN AS PAPAGO PARK, AUTHORIZING THE DRAWING OF A WARRANT FOR THE MINIMUM BID IN THE SUM OF THREE THOUSAND FIVE HUNDRED TWENTY-NINE AND 02/100 DOLLARS ($3,529.02), AUTHORIZING THE PAYMENT THEREFOR FROM THE 1957 PARK BOND FUND, AND DECLARING AN EMERGENCY.

WHEREAS, the Arizona State Parks Board will sell at public auction the land lying east of Phoenix known as Papago Park, comprising a total of one thousand one hundred seventy-six and thirty-four hundredths (1,176.34) acres at a minimum cost per acre of Three Dollars ($3.00), and

WHEREAS, the highest bidder at the time of sale must present to the Arizona State Parks Board a cashier's check for the minimum bid allowed of Three Thousand Five Hundred Twenty-nine and 02/100 Dollars ($3,529.02), and

WHEREAS, it would be to the benefit and advantage of the citizens of the City of Phoenix for the City of Phoenix to purchase the said Papago Park for park purposes,

NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF PHOENIX as follows:

SECTION 1. That the City Manager or his designated representative be, and he is hereby, authorized and directed to enter into the bidding for and to purchase the tract of land known as Papago Park, situated in Maricopa County, Arizona, and more fully described as follows, to-wit:

Southeast quarter of Section thirty-three, in Township two north, Lots six, seven, ten, and eleven of Section three; Lots one and two, the south half of the north half and the south half of Section four; the south half of the northeast quarter, and the east half of the southeast quarter of Section five; the north half of the northeast quarter, the north half of the north half of the northwest quarter, the southeast quarter of the northeast quarter of the northwest quarter, the east half of the southeast quarter of the northwest quarter, except for Lots seven and eight of said Section nine;

- 1 -

---

Received on 11/30/2020 (Public Records Request)

and the Lots one and two of Section ten; in Township one north, all in Range four east of the Gila and Salt River Base and Meridian, Arizona; containing one thousand one hundred seventy-six and thirty-four hundredths acres, from the Arizona State Parks Board at the auction to be held at Phoenix, Arizona, subject to the terms of sale.

SECTION 2. That the duly authorized disbursing officers of the City of Phoenix be, and they are hereby, authorized and directed to issue a warrant in the amount of Three Thousand Five Hundred Twenty-nine and 02/100 Dollars ($3,529.02) for the purchase of a cashier's check payable to the Arizona State Parks Board, and they are hereby authorized to pay to said Arizona State Parks Board the cashier's check representing the minimum bid allowed on the purchase of the above described land, in the event the City is the successful bidder, the said Three Thousand Five Hundred Twenty-nine and 02/100 Dollars ($3,529.02) to come from the 1957 Park Bond Fund.

SECTION 3. WHEREAS, the immediate operation of the provisions of this ordinance is necessary for the preservation of the public peace, health and safety, an EMERGENCY is hereby declared to exist, and this ordinance shall be in full force and effect from and after its passage by the Council, approval by the Mayor and publication and posting as required by law, and is hereby exempted from the referendum clause of the City Charter.

PASSED by the Council of the City of Phoenix this _10_ day of February, 1959.

APPROVED by the Mayor this _10_ day of February, 1959.

_Jack Williams_ Mayor

ATTEST:
_J. Burke_ City Clerk

APPROVED AS TO FORM:
_Merle J. Hanson_ Acting City Attorney

REVIEWED BY
_Ray W. Wilson_ City Manager

- 2 -

# Exhibit H

**Law authorizing transfer of Papago Park to the State of Arizona and town of Tempe, with 'park only' condition, for public purposes.**

Public Law 36          AN ACT          CHAPTER 39

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Interior is authorized and directed to transfer by quitclaim deed or other appropriate means to the State of Arizona and to the town of Tempe, Arizona, so much of the right, title, and interest remaining in the United States in and to the following described property, formerly constituting a part of the Papago Saguaro National Monument in Arizona, which was transferred in part to such State and in part to such town pursuant to the Act of April 7, 1930 (46 Stat. 142), as supplemented by the Act of July 7, 1932 (47 Stat. 646), on the condition that it be used for park, recreation, public convenience, or municipal purposes.

Approved May 13, 1955.

# Exhibit I

**Map attached to Presidential Proclamation 1262 in 1914, creating what is now Papago Park. The areas and boundaries have moderately changed over the last 100 years, but the area occupied by the baseball training facility (marked) has always been within Papago Park.**

