Eric P. Tuttle (CA Bar No. 248440*)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702
eric.tuttle@mto.com

Stephanie G. Herrera (CA Bar No. 313887*)
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077
stephanie.herrera@mto.com

John H. Gray (#028107)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  (602) 351-8000
Facsimile:  (602) 648-7000
JHGray@perkinscoie.com
DocketPHX@perkinscoie.com
*Pro Hac Vice*

*Attorneys for Intervenor-Defendant*
*San Francisco Giants Baseball Club LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lasse Norgaard-Larsen, et al.,<br><br>          Plaintiffs,<br><br>     vs.<br><br>City of Phoenix, et al.,<br><br>          Defendants. | Case No. 2:20-cv-02467-GMS<br><br>**INTERVENOR-DEFENDANT SAN FRANCISCO GIANTS BASEBALL CLUB LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Judge:   Hon. G. Murray Snow |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

I.    PLAINTIFFS CONCEDE THAT THE 1997 PATENT IS IRRELEVANT ..............2

II.   PLAINTIFFS' ARGUMENTS REGARDING THE 1930 ACT AND IMPLEMENTING 1937 PATENT MISAPPREHEND THE APPLICABLE STATUTORY LANGUAGE AND HISTORY ........................................................3

     A.    Plaintiffs Misread Section 4 Of The RPPA .......................................................3

     B.    Plaintiffs Are Wrong That The 25-Year Sunset In Section 4 Was Repealed; A *Different* 25-Year Sunset In Section 3 Was Repealed .................5

     C.    The Legislative History And Bureau Of Land Management Materials Attached To Plaintiffs' Response Support The Giants, Not Plaintiffs.............7

III.  PLAINTIFFS' CLAIMS REGARDING PURPORTED NON-FEDERAL USE RESTRICTIONS CANNOT SALVAGE THEIR CLAIM UNDER THE PROPERTY CLAUSE OF THE U.S. CONSTITUTION .................................9

CONCLUSION..........................................................................................................................11

i

# INTRODUCTION

Plaintiffs' Response (Doc. 50, "Response") to Intervenor-Defendant San Francisco Giants Baseball Club LLC's ("Giants") motion to dismiss (Doc. 47 ["MTD"]) is heavy on public policy arguments, but devoid of legal arguments germane to the only issue presented on this motion: Whether the facts alleged in Plaintiffs' Complaint (Doc. 1) and its attachments, together with judicially noticeable public land records (*see* Doc. 44, Giants' Unopposed Request for Judicial Notice & Exhibits A-D ["RJN"]), state a claim for relief under the Property Clause of the U.S. Constitution that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plaintiffs' Response leaves no doubt that the answer is no.

Plaintiffs do not (and could not) dispute that they must allege an interference with some property interest of the *federal government* to make out a claim under the Property Clause. As explained in the Giants' motion and confirmed by Plaintiffs' opposition, the Complaint identifies only two sources of purported *federal* property interests:

- The **"1937 Patent"** that granted much of the former Papago Saguaro National Monument from the United States to Arizona, pursuant to the Act of Congress of April 7, 1930, 46 Stat. 142 ("1930 Act")—including the Southeast Quarter of Section 33, where the baseball facility at issue ("Facility") is located (*see* Compl. at 6, 16, 25; Doc. 1-1 at 18 [legal description of leased property, attached to Complaint]; Doc. 1-2 at 1-3 [copy of 1937 Patent, attached to Complaint]); and

- The **"1997 Patent"** that granted other land that does not touch the tract where the Facility is situated from the United States to Phoenix (*see* Compl. at 7, 16, 20, 25; Doc. 1-2 at 5-7 [copy of 1997 Patent, attached to Complaint]).

Plaintiffs' Response concedes that the 1997 Patent did not grant the land on which the Facility sits. Its terms are therefore irrelevant. That leaves only the 1937 Patent (and the 1930 Act it implemented) as a potential hook for Plaintiffs' Property Clause claim. However, as explained in the Giants' motion—and as Plaintiffs' Response and its attached exhibits only make clearer—Plaintiffs' arguments regarding the 1937 Patent and 1930 Act stem entirely from misreading the statutory language and history. These misapprehensions of law cannot be overcome by re-pleading—the use restrictions and reversionary rights in

the 1930 Act and 1937 Patent expired by operation of federal statute in 1984 and, thus, no longer apply to the land at issue as a matter of law. (*See* MTD at 2, 5-7, 12-15.)

Plaintiffs do not identify any other source of a federal property interest in this land. They point to a few other state and local sources of purported restrictions on use of the land: the 1959 Conditional Certificate of Purchase between Arizona and Phoenix ["1959 Certificate"], the 1964 deed transferring title from Arizona to Phoenix ["1964 Deed"], and Phoenix Ordinance No. S-1445. However, Plaintiffs have not alleged and cannot allege any connection between these instruments and any *federal* property interest. The alleged state and local restrictions do not help Plaintiffs state a plausible Property Clause claim.

Plaintiffs evidently disagree with the policy choices that Phoenix, Scottsdale, and the United States have made with respect to Papago Park. But those decisions lie with the elected officials of those governments and, ultimately, their electorates (of which Plaintiffs are only two members). The only issue here is whether Plaintiffs have stated a plausible Property Clause claim based on the facts alleged in the Complaint and its attachments, public records, and clear statutory law. Because Plaintiffs have not, and cannot, plausibly allege that the Giants' use of the Facility interferes with any federal property interests, the Court should dismiss Plaintiffs' fatally deficient Property Clause claim with prejudice.

## I. PLAINTIFFS CONCEDE THAT THE 1997 PATENT IS IRRELEVANT

As detailed in the Giants' motion, the 1997 Patent is irrelevant because the land on which the Facility sits was not conveyed by that patent. (MTD at 2-3, 8-11, 15-17.)

Plaintiffs concede this issue in their Response. Plaintiffs characterize the Giants' position as "well-documented" and "based upon copious research," and they do not even attempt to contest that the 1997 Patent applies. (Response at 2, 10-11.) Plaintiffs' only response is that they can nevertheless make out a claim because other instruments apply to, and impose conditions and reverter provisions on, the land at issue. (Response at 11.) The Giants address these other alleged sources of "park-only protections" in Section III, *infra*.

## II. PLAINTIFFS' ARGUMENTS REGARDING THE 1930 ACT AND IMPLEMENTING 1937 PATENT MISAPPREHEND THE APPLICABLE STATUTORY LANGUAGE AND HISTORY

By contrast, it is undisputed that the 1937 Patent *did* convey the land on which the Facility today sits pursuant to the 1930 Act, and that the 1930 Act and implementing 1937 Patent contained use restrictions and reversionary rights in the United States that at one time applied to the property. However, as explained in the Giants' motion (MTD at 2, 6-7, 12-15), any federal use restrictions and reversionary rights under the 1930 Act and implementing 1937 Patent expired 25 years after the United States approved a change of use and transfer of title to the land from Arizona to Phoenix in 1960, pursuant to a sunset provision set forth in Section 4 of the Recreation and Public Purposes Act ("RPPA"), Pub. L. No. 387, 68 Stat. 173-75, § 4 (1954), codified at 43 U.S.C. § 869-3.

Plaintiffs make three arguments in response—all wrong on the law, the facts, or both. First, Plaintiffs argue that the sunset provision in Section 4 of the RPPA (Section 869-3 of the United States Code) does not apply; but Plaintiffs misread the plain language of the statute. Second, Plaintiffs argue that the sunset provision was repealed before the United States' 1960 approval; but Plaintiffs are mixing up a different, repealed sunset in Section 3 of the act with Section 4, which is still current law. Third, Plaintiffs argue that the legislative history and various publications of the U.S. Bureau of Land Management show that the land at issue to be used as a park in perpetuity; but those materials (which could not override the statute in any event), on their face contradict Plaintiffs' argument. The statutory language, legislative history, and Bureau of Land Management materials all make clear that Plaintiffs' Property Clause claim is baseless as a matter of law.

### A. Plaintiffs Misread Section 4 Of The RPPA

Plaintiffs admit in their pleadings and Response that in January 1960, Arizona sought and received federal approval to transfer the Southeast Quarter of Section 33 (where the Facility is located) to Phoenix. (*See* Compl. at 8, 15; Doc. 1-2 at 4; Doc. 1-3 at 2-3, 9, 15; Response at 6, 9.) As explained in the Giants' motion, Section 4 of the RPPA authorizes the Secretary of the Interior to approve such "transfers of title or changes in use

-3-

… with respect to any patent heretofore issued under any Act," in which case a 25-year sunset applies to "all reverter provisions and other limitations on transfer or use, under this or any other Act affecting the lands involved." Pub. L. No. 387, 68 Stat. 173-75, § 4, 43 U.S.C. § 869-3.  Thus, the United States' 1960 approval triggered this 25-year sunset, causing all federal use restrictions and reversionary interests to expire at the end of 1984.  (*See* MTD at 2, 5-7, 12-15.)  Indeed, the Certificate of Approval of Transfer and Change of Use issued by the United States to memorialize the 1960 approval (the "1960 Certificate") expressly cites the RPPA and states that the United States' interests would "terminat[e] 25 years from January 1, 1960."  (Doc. 1-3 at 15 [1960 Certificate, attached to Complaint]; Exhibit A to Response [same][1]; *see also* Doc. 1-2 at 4 [admitting that "[t]he correct 'Certificate of Approval of Transfer and Change of Use' is No. 4, dated January 1, 1960"]; Doc. 1-3 at 2-3 [similar].)

     Plaintiffs' arguments about Section 4 of the RPPA contradict its plain text.  First, Plaintiffs argue that Section 4 applies only to patents "heretofore issued," which they say means "only … patents issued after the amendment of June 4, 1954, which is not the case of Papago Park."  (Response at 5-6.)  Not so.  "Heretofore" means "[u]p to" or "before [the specified] time."  Heretofore Definition, *Black's Law Dictionary* (11th ed. 2019).  In other words, Section 4 applies to patents issued *before* the 1954 amendments—such as the 1937 Patent—not after.[2]

     Second, Plaintiffs argue that the United States must authorize *both* a transfer of title *and* a change of use to trigger the 25-year sunset and claim that only the former occurred here.  (Response at 5-6.)  Plaintiffs are substituting conjunctive phrases for the disjunctive language in the statute.  Section 4 does not say "such transfer and use," as Plaintiffs claim (*id.* at 5), it says "such transfer *or* use," and expressly empowers the Secretary to authorize

---

[1] Exhibit D to the Giants' Unopposed RJN is a more legible copy of the same Certificate.  (*See* Doc. 44-1 at 8-9.)

[2] Plaintiffs may be thinking of "hereafter," which means "[f]rom now on; henceforth."  Hereafter Definition, *Black's Law Dictionary* (11th ed. 2019).

"transfers of title *or* changes of use." Pub. L. No. 387, 68 Stat. 173-75, § 4, 43 U.S.C. § 869-3 (emphasis added). Even if the statute said "and" not "or," Plaintiffs' argument would nevertheless fail because, as the public land records attached to the Complaint (and again to Plaintiffs' Response) show, the United States authorized a change of use along with the transfer of title from Arizona to Phoenix—expanding on the uses permitted under the 1937 Patent to allow "construction of a baseball stadium"; indeed, the document issued by the United States is entitled "Certificate of Approval of Transfer *and* Change of Use." (Doc. 1-3 at 15 [1960 Certificate (emphasis added)]; Exhibit A to Response [same].)

Third, Plaintiffs appear to overlook that the 25-year sunset applies to "*all* reverter provisions and other limitations on transfer or use, under this or any other Act affecting the lands involved." Pub. L. No. 387, 68 Stat. 173-75, § 4, 43 U.S.C. § 869-3. This means that the 25-year sunset extinguished not only the reverter provision and use restrictions set forth in the 1937 Patent and in the RPPA, but also those in the 1930 Act, which is another "Act affecting the lands involved."

### B. Plaintiffs Are Wrong That The 25-Year Sunset In Section 4 Was Repealed; A *Different* 25-Year Sunset In Section 3 Was Repealed

Plaintiffs also argue in their Response (as in the Complaint) that the 25-year sunset in Section 4 was repealed in 1959, mere months before the United States' 1960 approval. Thus, Plaintiffs claim, the reverter and use restrictions set forth in the 1930 Act and 1937 Patent never became subject to the 25-year sunset and continue to bind the Facility. (Response at 6, 9-10; Compl. at 8, 15; Doc. 1-3 at 3, 7, 9, 14.) This is just plain wrong.

Plaintiffs' misapprehension appears to stem from the fact that Congress added *two* 25-year sunset provisions to the RPPA in 1954. The 1954 amendments are attached as Exhibit B to Plaintiffs' Response (Doc. 50-1 at 3). As explained in the Giants' motion at pages 13 to 15 and above, the pertinent sunset is set forth in *Section 4* of the RPPA and is triggered by the Secretary of the Interior's authorization of "transfers of title or changes in use" of land. Pub. L. No. 387, 68 Stat. 173-75, § 4 (the "Authorization Sunset"). Section 4 was codified as amended at Title 43, Chapter 20, Section 869-3 of the United States

-5-

Code; it has never been amended and remains current law. See 43 U.S.C. § 869-3.

The 1954 amendments also added a 25-year sunset provision to *Section 3* of the RPPA. Section 3 provides that lands conveyed by the United States pursuant to the Act may not be transferred or used for purposes not specified in the conveyance without the Secretary's authorization, subject to a federal reversionary interest. *See* Pub. L. No. 387 (c. 263), § 3, 68 Stat. 175 (June 4, 1954), codified at 43 U.S.C. § 869-2(a); Exhibit B to Response (Doc. 50-1 at 3). From June 4, 1954 to September 21, 1959, the last sentence of Section 3 stated: "The provisions of this section, however, shall cease to be in effect as to any lands patented under this Act twenty-five years after the issuance of patent for such lands." *See* Pub. L. No. 387, § 3; Exhibit B to Response (Doc. 50-1 at 3). In other words, as enacted in 1954, the last sentence of Section 3 imposed an *automatic 25-year sunset* on *all use restrictions and federal reversionary rights* for *all lands* granted by the United States pursuant to the Act (the "Automatic Sunset").

The Automatic Sunset was repealed by Public Law 86-292, § 2, 73 Stat. 571 (Sept. 21, 1959), attached as Exhibit C to Plaintiffs' Response (Doc. 50-1 at 4). Public Law 86-292 provides in pertinent part: "The last sentence of section 3 of the Act of June 14, 1926, as amended, is repealed." The Automatic Sunset is thus not current law and (unlike the Authorization Sunset) no longer appears in the United States Code. 43 U.S.C. § 869-2(a).

Plaintiffs cannot plead around the reality that Section 3 was repealed, not Section 4; the Authorization Sunset remained on the books in 1960 and is still there today.[3]

---

[3] The Court can and should decide this straightforward question of law on the undisputed statutory text. Plaintiffs claim "expert legal opinion from the Department of Interior" is needed (Response at 7), but that would be contrary to law. "Expert testimony is not proper for issues of law"; an expert's role is to "interpret and analyze factual evidence," not law. *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (quotation marks and citations omitted). This includes legal questions of statutory interpretation. *See, e.g., United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("meaning of [a] statute" is "a subject for the court, not for testimonial experts"). "The only legal expert in a federal courtroom is the judge." *Id.* In any event, the Court need look no further than Plaintiffs' own allegations (which must be accepted as true on this motion) for the Department of Interior's reported position: "The Bureau of Land Management reviewed its Papago Park

### C. The Legislative History And Bureau Of Land Management Materials Attached To Plaintiffs' Response Support The Giants, Not Plaintiffs

Finally, Plaintiffs point to various extraneous materials that they claim support their argument that the land underlying the Facility should be restricted to use as a public park. These materials either support the Giants' arguments or are irrelevant.

***Exhibit D (Doc 50-1 at 5).*** As Plaintiffs readily admit, the legislative history for the 1954 amendments shows that Congress' intent was to "promote maximum utilization and development" of public lands "without the rigidity of the existing reverter clause." (Response at 2 [quoting S. Rep. No. 83-1146, at 5 (1954)].) In other words, Congress' aim in amending was *eliminating* the barriers to development posed by earlier perpetual use restrictions and reversionary rights. That is precisely why Congress enacted the sunset provisions in Sections 3 and 4. With respect to Section 4, the Senate Report excerpt that Plaintiffs attached to their Response specifically states:

> [S]ection 4 would permit past grantees under the Recreation Act, supra, or under other public land laws, to take advantage of the more flexible provisions described in the preceding paragraph. Twenty-five years … after a transfer or change of use is authorized under section 4 of the bill … the conditions of the patent and the provision for reversion would become ineffective. The enactment of this measure should help promote maximum utilization and development of the public lands.

(*Id.* [quoting S. Rep. No. 83-1146, at 5]. This confirms Section 4's plain language and shows it worked exactly as intended here: 25 years after the United States approved a transfer of the Southeast Quarter of Section 33 from Arizona to Phoenix, and a change of use (to permit "construction of a baseball stadium" (*see* Doc. 1-3 at 15 [1960 Certificate]; Exhibit A to Response [same]), the restrictions and reverter provisions in the 1937 Patent and 1930 Act "became ineffective" and no longer restrict development of the land.

***Exhibit E (Doc. 50-1 at 6).*** The Bureau of Land Management "Manual Transmittal files and the area of the new baseball fields" and "determined that the United States no longer has any property interest in the area." (Doc. 1-3 at 15.)

-7-

Sheet" likewise interprets the statute and its history exactly as the Giants do. Paragraph F explicitly states that although the Act of September 21, 1959 repealed the general "25-year limitation on reverters," i.e., the Automatic Sunset in Section 3, "this act *did not disturb the 25-year limitation on reverters imposed by the Act of June 4, 1954, that must attach to authorized transfers of title and changes of use involving patents issued prior to June 4, 1954*," i.e., the Authorization Sunset in Section 4. (*Id.* [quoting U.S. Dep't of Interior, Bureau of Land Management, *Manual Transmittal Sheet 2740 – Recreation and Public Purposes*, Release 2-258 at 9 (July 1, 1988) (emphasis added)].) Paragraph .33 ("Exceptions to Perpetual Reverter") confirms the same. (*Id.* [quoting *Manual Transmittal Sheet 2740*, *supra*, at 17 ("The Act of June 4, 1954 (43 U.S.C. 869-3), provides authority to permit transfers of title and changes of use for any patents issued prior to June 4, 1954…. The 1954 Act provides that upon BLM approval of the transfers or use changes, all reverter provisions and other limitations on transfer or use contained in the patent shall cease to be in effect 25 years after the approval.")].)

**Exhibit F (Doc. 50-1 at 7).** The "Recreation & Public Purposes Act" pamphlet attached as Exhibit F to Plaintiffs' response sheds no light on the issues presented by this motion.[4] The pamphlet merely explains that land conveyed by the United States under the

---

[4] The miscellaneous authorities Plaintiffs cite are equally irrelevant. For example, 40 U.S.C. § 550 (Response at 3) provides for the disposal of "surplus real property" for various uses, including "as a public park or recreation area," and sets forth requirements for a deed of conveyance for property disposed "under this subsection." *Id.* § 550(e)(1), (4). The United States did not dispose of the Southeast Quarter of Section 33 under 44 U.S.C. § 550(e)—it is undisputed that the land was granted in the 1937 Patent under the 1930 Act. Public Law 89-670 (Response at 3-4) created the Department of Transportation; it is plainly irrelevant. Pub. L. No. 89-670, 80 Stat. 931, § 2(b)(2) (1966). The Florida and Massachusetts state court rulings concern principles of (extraterritorial) state law that have no bearing on Plaintiffs' Property Clause claim or land in Arizona. (Response at 5 [citing *Florida E. Coast Ry. Co. v. City of Miami*, 372 So. 2d 152 (Fla. Dist. Ct. App. 1979) (FL eminent domain law, including doctrine of "prior public use," an inapt rule relating to the exercise of eminent domain authority); and *Smith v. City of Westfield*, 478 Mass. 49 (2017) (MA constitutional law; does not mention "Public Trust Doctrine," but MA common law doctrines discussed therein are irrelevant to rights under federal or Arizona law)].)

RPPA is generally subject to conditions and reverter provisions. True—unless and until the United States approves a transfer of title or change of use. That a one-page pamphlet does not exhaustively recount all the statute's ins-and-outs does not alter the statute's text.

**Exhibit G (Doc. 50-1 at 8).** As discussed above and in Section III *infra*, municipal ordinances are irrelevant to Plaintiff's federal Property Clause claim.

**Exhibit H (Doc. 50-1 at 9).** Public Law 36 appears to concern the transfer of other land within Papago Park to the City of Tempe. Plaintiffs do not allege that the land at issue was transferred to Tempe; they allege that it was transferred by the United States to Arizona and then, upon federal approval, from Arizona to Phoenix. (*See* Compl. at 8, 15; Doc. 1-2 at 4; Doc. 1-3 at 2-3, 9, 15; Response at 6, 9.) Grants to Tempe are immaterial.

**Exhibit I (Doc. 50-1 at 10).** This map of the former Papago Saguaro National Monument, which Plaintiffs appear to have modified, does not help Plaintiffs either. It merely confirms what is undisputed: The Facility is located in the Southeast Quarter of Section 33, which is a portion of Papago Park.

### III. PLAINTIFFS' CLAIMS REGARDING PURPORTED NON-FEDERAL USE RESTRICTIONS CANNOT SALVAGE THEIR CLAIM UNDER THE PROPERTY CLAUSE OF THE U.S. CONSTITUTION

Plaintiffs' remaining arguments concern purported use restrictions that do not implicate *federal* property interests and are thus irrelevant to their Property Clause claim.

"The term 'property' under the Property Clause has been defined to include 'all other personal and real property rightfully belonging to the United States.'" *Sec'y of Hous. & Urb. Dev. v. Sky Meadow Assoc.*, 117 F. Supp. 2d 970, 976 (C.D. Cal. 2000) (quoting *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 331 (1936)). As such, "the Property Clause cannot be properly invoked … unless some actual and substantial property interest of the federal government is involved." *United States v. Davis*, 872 F. Supp. 1475, 1484 n.28 (E.D. Va. 1995), *aff'd*, 98 F.3d 141 (4th Cir. 1996) (quotation marks and citation omitted). A complaint that does not allege an implicated federal property interest therefore fails to state a claim on which relief may be granted under the Property Clause. *See, e.g.*, *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1181 (D. Nev.

2015) (plaintiff failed to state a plausible Property Clause claim because it "identif[ied] no federal-government-owned property" or "constitutionally protected interest" of the federal government implicated by the challenged foreclosure).

Plaintiffs claim that the Giants' motion overlooked purported restrictions in the 1959 Certificate of Purchase between Arizona and Phoenix, the 1964 Deed between Arizona and Phoenix, and City of Phoenix Ordinance No. S-1445 (attached to Plaintiffs' Response as Exhibit G). (Response at 4, 9-10.) These instruments do not implicate any additional federal rights and so cannot support a claim under the Property Clause.

The 1959 Certificate and 1964 Deed concern a purchase agreement between Arizona and Phoenix; the United States was not a party to that transaction or a signatory to those documents, and the documents on their face do not purport to create any new federal rights. The documents simply reference then-applicable restrictions and reservations set forth in the 1937 Patent. (*See* Doc. 1-2 at 9 [1964 Deed, stating that Phoenix's acceptance of the land was "subject to the following restrictions and reservations contained in Patent No. 1093785 from the United States of America to the State of Arizona, dated November 17, 1937, and in amendments or modifications thereof"]; Doc. 1-2 at 15-16 [1959 Certificate describing restrictions and reservations in 1937 Patent].) But as explained in the Giants' motion and above, these federal restrictions and reservations were extinguished in 1984 pursuant to Section 4 of the RPPA. The 1964 Deed transferring the land from Arizona to Phoenix expressly states that the land was subject to restrictions in the 1937 Patent "*and in amendments or modifications thereof*," (Doc. 1-2 at 9 (emphasis added)), and those restrictions were modified (eliminated) in 1984 by operation of Section 4.

Indeed, it would be directly *contrary* to the Property Clause—and the Supremacy Clause—to hold that a state instrument governed by state law could override the effect of an act of Congress concerning public lands. *See, e.g.*, *Kleppe v. New Mexico*, 426 U.S. 529, 542-543 (1976) ("[W]hen Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause."). Congress determined that federal restrictions and reversionary rights in this land would terminate 25 years after the

1  United States approved a transfer or change of use, exercising its plenary authority under
2  the Property Clause to regulate and "dispose" of federal property, *Alabama v. Texas*, 347
3  U.S. 272, 273 (1954) (per curiam), including its right "to prescribe the conditions upon
4  which others may obtain rights in [such property]," *Kleppe*, 426 U.S. at 539-40 (quotation
5  marks and citations omitted).  That judgment cannot be—and was not—supplanted by a
6  State or by policy disagreement of private citizens.  *See, e.g.*, *Yunis v. United States*, 118 F.
7  Supp. 2d 1024, 1031 (C.D. Cal. 2000) (Congress' plenary authority under Property Clause
8  cannot be overridden by "authority of another sovereignty" or "private individual[s]"
9  (quotation marks and citation omitted)).

10  The municipal ordinance raised in Plaintiffs' Response (but not their Complaint)
11  implicates only Arizona and Phoenix's interests on its face; there is no mention of the
12  United States.  (Doc. 50-1 at 8, Exhibit G to Response.)  The ordinance thus cannot give
13  rise to a Property Clause claim as a matter of law.  *See Davis*, 872 F. Supp. at 1484 n. 28.

## **CONCLUSION**

15  As explained above, Plaintiffs allege only two purported sources of federal property
16  interests.  Plaintiffs concede that one (the 1997 Patent) is irrelevant and their arguments
17  regarding the other (the 1937 Patent) reflect misapprehensions of law that cannot be cured
18  by re-pleading.  Plaintiffs' other arguments do not implicate *federal* property interests and
19  thus cannot salvage their Property Clause claim.  Because amendment would be futile, the
20  Giants respectfully request that the Court dismiss the Complaint with prejudice.  *See, e.g.*,
21  *Flower v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court …
22  does not abuse its discretion in denying [*pro se* litigant] leave to amend where amendment
23  would be futile."); *Clarke v. Ryan*, No. CV-14-01810-PHX-JJT, 2015 WL 4041222, at *2
24  (D. Ariz. July 1, 2015) (dismissal of *pro se* complaint without leave to amend is proper
25  "when … as a matter of law, the defect cannot be cured"); *Fressadi v. Glover*, No. CV-16-
26  03260-PHX-DJH, 2017 WL 5705830, at *15 (D. Ariz. Sept. 14, 2017) (same)).

Dated: October 12, 2021.

**MUNGER TOLLES & OLSON LLP**

By: *s/ Eric P. Tuttle*

Eric P. Tuttle (CA Bar No. 248440*)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426

Stephanie G. Herrera (CA Bar No. 313887*)
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
*Pro Hac Vice*

John H. Gray (#028107)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788

*Attorneys for Intervenor-Defendant*
*San Francisco Giants Baseball Club LLC*

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on October 12, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

☒ I hereby certify that on October 12, 2021, I served the attached document by first class mail on Chief Judge G. Murray Snow, United States District Court of Arizona, Sandra Day O'Connor U.S. Courthouse, Suite 622, 401 West Washington Street, SPC 80, Phoenix, AZ 85003-2161.

*s/ Stephanie Lawson*